Good morning. May it please the court, my name is Erin Quinn, and I'm appearing today on behalf of the petitioner, Mr. Devinder Singh. Ms. Quinn, I noticed that Mr. Jobe is also listed as counsel. Are you going to be sharing? I don't see Mr. Jobe. No, he's not here, Your Honor. We're from the same office. I'll be presenting the argument today. For the whole ten minutes? Yes, Your Honor. Very good. Fine. Thank you. Okay. The facts of this case are undisputed. The immigration judge in this case declined to make an explicit adverse credibility finding, and under the law of this circuit, the facts as testified to by the respondent must be taken as true. I don't know if that's quite true. What he believed did not make out the case. I don't think he found the petitioner plausible. Yes, Your Honor. While he does bring up issues of implausibility, in fact, he actually cites, I would arguably say, five specific instances where he finds. Let me ask you about one of them. It's not the most specific, but it's one that just struck me as I was reading it. The guy claims to be peaceful, but he joins an especially violent faction. I knew a bunch of radicals back in the late 60s, early 70s. And if you were hard left wing, but you were peacefulness and opposed to violence, you did not join the weatherman faction. You did not join the progressive labor faction of the SDS. And these ideological views and the choices of what faction you joined, you just wouldn't do one if you had the other. Right, Your Honor. Well, in making that determination, the immigration judge is relying on the country profile provided. And I do not believe that he correctly states the evidence in the record. First of all, the country profile at 242 states that while most all India Sikh Student Federation factions claim to be opposed to the use of violence, many AISSF members have committed violent acts. And when you use that phrase. Wait, you're reading paragraph 20. Paragraph 19 is the one that counts. And it says, with the exception of the violence prone made a Chawla group all supported the May 1994 effort to establish a united alkali doll. Yes, Your Honor. It looks like they're the really hard violent fact. I wouldn't say that's necessarily true. What that sentence paragraph refers to, it makes the phrase the violent prone Metta Chawla, which implies that maybe some members, all members, certain parts of that faction are prone to violence. What Mr. Singh testified to when he's asked about the Metta Chawla group is he says on 148, they're like some people. All of them are saying peacefully. Some are saying by force. And when you read paragraph 19 in that country profile with paragraph 20, and then later on in the record on 245 where it says many Sikh organizations renounce the use of force, but then that there are persons within each faction that do end up being violent. I feel that his his testimony is entirely consistent with what is presented there in the country profile. Mr. Singh stated that he did, in fact, carry out peaceful activities, but does mention on 148 that they do say that they're peaceful, but some are using violence, which is completely consistent with the country profile. Regarding your first point regarding the IJ's decision and whether, in fact, this is an adverse credibility determination, you mentioned that he has made decisions regarding implausibility. I would argue that his statement of implausibility does not rise to the level of an explicit adverse credibility finding, as is required by this circuit. I thought it did. I thought we had a case, Singh Chawla or something like that, that said exactly that. And also Judge O'Scanlan's question that he asked in the previous argument seemed to make it essential to find that. Suppose somebody consistently says with no shilly-shallying, no self-contradiction, if I go back to my village, the Martians will take me away in their flying saucer. Well, there isn't any inconsistency. You can't even say that the guy is lying. He may just be schizophrenic, but it's too implausible for him to have a well-founded fear. That's correct, Your Honor. Implausibility can certainly be part of a negative credibility determination, but what the law of the circuit requires is that determination must be made and that determination must be explicit. And that is what distinguishes this decision in this case. First of all, the implausibilities mentioned certainly don't rise to the level of Martians. But secondly, he's never made the adverse credibility determination in the first place. I'm not sure I follow your rule. If you have an implausibility determination made by the IJ, isn't that in itself tantamount to a credibility determination? In this circuit, no, it is not. But what else is needed as you look at the circuit rule? Well, for instance, if we go to one decision that's a little more recent, which is he versus Ashcroft, there they said specifically it's H.E. versus Ashcroft, and the site on that is 328S3D. Does that mention any of the briefs? No, it's not. It relies on the same reasoning as Menimbau versus Ashcroft. Before you leave the courtroom, please leave a gum sheet and sufficient copies for the opposing counsel in the court. Yes, Your Honor. But in that decision, the IJ concluded that Mr. Hugh's story was entirely implausible. And there this circuit said that he stopped short of making an explicit adverse credibility determination. And I think that's exactly the situation we have here in this case. It seems to me that the immigration judge, in his fairly lengthy decision, it's eight pages, goes out of his way to make it clear that Mr. Singh, in his mind, has failed to meet his burden of proof, but nowhere does he make a broad-sweeping statement regarding the overall credibility of his testimony. In fact, he specifically lays out five concerns which we feel are not supported by substantial evidence. Is one of them the misspelling in the letterhead? Yes, Your Honor. In that respect — Isn't that relevant? That would be relevant, Your Honor. But in this case, Mr. Singh was never provided the opportunity to respond. And under the law of this circuit, this would then have to be remanded to give him that opportunity. The IJ brings this up in the — Introduced this in exhibit? This was introduced as an exhibit. So he would have a chance during the hearing to explain anything he wanted regarding the exhibit. Right. But the immigration judge — He doesn't get a chance to respond in a jury trial to the inference that the jury draws from one of the exhibits. You have to give your explanations before the jury gets a case. Well, in immigration law of this circuit, such as Menembao, you're also, under due process, required to give the respondent or the petitioner in this case the opportunity to respond to any credibility concerns. And in this instance, the immigration judge did not give him that opportunity. There was a limited questioning regarding this document. And that questioning appears only on 193 of the record. And he is asked, in fact, who signed the letter, where he got it from, and general foundation is laid. However, the immigration judge at that time, nor does any counsel, show that there are any concerns regarding other issues of the authenticity of this document. Very frequently in a trial, a lawyer will let the other side put evidence in and just hide in the tall grass until the evidence is over before showing what the problem for that side's case is. Well, in the immigration context, with the due process concerns surrounding credibility — Due process applies to criminal and civil cases outside the immigration context. That's correct, but with regard specifically to credibility findings, the immigration judge is required to give him an opportunity to respond and address any credibility concerns. Menembao tells us that. I would like to reserve the rest of my time. Oh, question? I have one more question. One thing that struck the I.J. as not credible is this guy claims to be so political, but he can't even tell the difference between the national Congress and a state Congress, state legislature. That's correct, Your Honor. The I.J. did make that finding. It seems funny for a guy that's so political.  If you go to the record, the petitioner in this case, Mr. Singh, did in fact testify credibly and detailed to Punjabi politics which he was involved in. During this time, Mr. Singh was 15 to 22 years old — I mean, 22 at the end when he left. And during his testimony, he states several parts regarding politics that are true and consistent. I remember when I was 15. I mean, I wasn't nearly as political as this fellow, but I knew the difference between the Virginia state legislature and the United States House of Representatives, which this fellow doesn't in the analog to India. Well, at 147, he shows he does know the difference between all the factions of the All-India Sikh Student Federation. He lists them in detail and states what each of them stands for, including Daljit Bitu, Manjit Singh. Later on, he explains specifically about the elections, both he's asked about in Cross and by the IJ, at 183 and 184. He says that in 1991, the voting was canceled because there were concerns in Punjab that the Sikhs might win. On 184, he goes on further to describe the detailed activities of his party. And on 185, he describes in 1992 that the elections were boycotted and that Singh, in the end, became chief minister. Thank you, counsel. You have about a minute for a rebuttal. We'll hear from the government. May it please the Court, my name is Victor Lawrence and I represent the Attorney General. This Court should deny this petition for review because Mr. Singh did not meet his burden of proof in showing that he is eligible for asylum by presenting credible, direct, and specific evidence. Mr. Singh's testimony contains significant inconsistencies that go directly to the heart of his claim and thus support the immigration judge's finding that Mr. Singh did not credibly meet his burden of proof. Mr. Singh had the opportunity to state his case before an INS asylum officer, before the immigration judge, and before the Board of Immigration Appeals, and none of those bodies found Mr. Singh to be credible. Under the substantial evidence standard, this Court should not reverse the immigration judge's opinion unless it feels that any reasonable adjudicator would be compelled to conclude to the contrary. We submit that under the substantial evidence standard of review, this Court should deny this petition. This is an adverse credibility finding. What is your interpretation of our law in this area? You've heard Ms. Quinn's view, what's your view? Ms. Quinn, in my interpretation of what she was saying, was suggesting that there had to be some magic words in an immigration judge's opinion that there is an explicit adverse credibility finding. That's not the law of the circuit. The law of the circuit, and I think it was the Leon Harris case, specifically said there's no magic words that are necessary to show that the immigration judge is issuing an adverse credibility decision. But when you look at the record, specifically at page 104 and page 3 of the immigration judge's opinion, there's no doubt from the context of this opinion that this is clearly an adverse credibility case. At the top of page 3 in the latter part of the first paragraph, the immigration judge is discussing the case law that requires the alien to bear the burden of demonstrating his eligibility for asylum by presenting credible, direct, and specific evidence. You said the top of page? 104. Oh, on 104? Okay, sorry. The latter half of the first paragraph talks about what the burden is, that the burden is to present credible, direct, and specific evidence to make a plausible, coherent account of your claim. Next sentence. In this case, the court finds that at least the respondent has failed to carry his burden of proof, and then he explains why, and everything that he explains goes to his credibility because they're all dealing with significant inconsistencies that go to the heart of his claim. And then after listing the five or six examples of significant inconsistencies, the immigration judge concludes on page 7 in the first full paragraph, in sum, the court finds that the respondent has failed to carry his burden of proof in these proceedings. There are too many matters that are simply unexplained. Well, the conclusory language about failing to carry burden of proof doesn't really help. What we really need is specific findings, do we not, with respect to specific inconsistencies or contradictions or whatever. Yes, and the immigration judge has provided those specific inconsistencies. Your Honor mentioned the inconsistency about being a part of a violence-prone group and saying that he's entirely peaceful. One thing that Ms. Quinn did not mention was the significant inconsistency of the fact that he presented an election card. This is somebody that claims that he doesn't even believe in the voting system in India. So one of the things he provides to the immigration judge is an election card, and it has the wrong birth date on it for him, five years' difference between the birth date that he has in his asylum application at page 285 and 292. And that in itself is a significant inconsistency because it goes to his identity. Who is this person that's providing this claim? He claims he's somebody that doesn't believe in the voting system, yet he has an election card. He also claims he doesn't believe in the voting system. I don't see any inconsistency there. A lot of people don't believe in the elections that happen to be going on in their country, and they might still have a passport or an I.D. card. I am concerned about the fact that his I.D. card doesn't have the same birthday, date, doesn't have the same age even. Sure. Your Honor, I would suggest they're both inconsistencies. The I.J. looked to me like he took an awful leap of faith to say because he had the card, didn't vote, he couldn't believe anything else he said. No, but that's just one example of six. Well, there are several examples here of the I.J. speculating about things that don't seem to be supported by the record. None of which I believe compel any reasonable adjudicator to conclude to the contrary. Was it a general identification card, or was it specifically a voter card? It was specifically an election card that he would need to vote in elections. Does it have a page number at the tip of your tongue? Of what? The election card. Yeah, page 278. Thanks. So he has this election card, but yet he believes that the voting system in India is completely corrupt, and, you know, and he never voted in his life. He claims he never voted in his life, but he has this election card. Well, about 60% of the Americans have election cards if they want to use them, but they don't use them. Okay. On both your houses. Well, but when you combine that with the inconsistency that the election card didn't even have his correct birth date. Well, that is a problem. Right. And, you know, the person's identity goes directly to the heart of his claim, as this Court has ruled. Does he make any point about not knowing who this guy really is? Well, in the body of his decision, he doesn't specifically discuss identity. Because that would be an interesting point. That is a very relevant question in immigration, is who are you? Sure. And, you know, he discussed each of these issues with respect to the election card. But, you know, here he gets this election card saying that he's 27 years old, and the guy testifies in two places that he's 22 years old. So under the opinion of Farrer versus Ashcroft of this Court, that is something that goes directly to one's identity, which goes to the heart of one's asylum claim. Your Honor, also mentioned the significant inconsistency of the misspelling of the word federation. Well, good grief. Now that we have globalization, I see tons of paper coming into the United States that's printed in other countries, and their English proofreading skills are challenged beyond belief sometimes. We see all kinds of warranties and sign-ups and things you can send back to the manufacturer, and it's obvious that the person who printed that document didn't have the foggiest notion of how the English language is put together. Well, you know, as this Court, I'm sure, sees a lot of these Indian, all India Sikh students, federation cases, and I've certainly seen a lot in my position, but yet I've never seen such glaring spelling error. Leaving out an R in federation. Well, I think it was the F-E-D-R. So the immigration judge rationally concluded that this was a fraudulent document. India's national language is English, right? That's correct, yes. Thank you. You have local dialects and the national language is English? I'm not sure it's universally used throughout the country. It's a big country. It's like English is the national language of the Philippines, too. Well, I believe India was a colony of England, and I believe English is widespread, and it seems to the immigration judge it seemed like this was a fraudulent document that this petition was presented, which goes, again, to his identity because he's claiming that he's a member of this particular group, yet he provides this extremely questionable document with letterhead that is apparently misspelled. The IJ also had some problems with the Mata Chawala faction. Correct, Your Honor. And I think he kind of misspoke what the petitioner actually said about it. The petitioner said it wasn't violent. They operated by non-peaceful means sometimes. I don't believe that if you look at page 147 and 148 of the record, I don't think that's what the petitioner said. The immigration judge at the bottom of page 147 is asking about the Mata Chawala group, and there's this quote, and in part of that quote he says, all of them are saying peacefully, and the whole implication and context of this quote is this Mr. Singh is suggesting that the Mata Chawala group is a peaceful faction. But as Your Honor pointed out, the State Department report at page 19 in extremely explicit language says that the Mata Chawala group is a violent prone group. So the immigration judge rationally concluded that this was an inconsistency that went to the heart of his claim. Thank you, Counselor. Your time has expired. Thank you. We will hear from Ms. Quinn. You have some reserved time, about a minute. Your Honor, I believe Counsel for the Government misstates the record when he says that he has been denied on credibility at three levels of review, at the asylum office, immigration judge, and the BIA. There's nothing in the record to tell us how the asylum office ruled, and the immigration judge's decision was actually just affirmed by the BIA, and we are here today trying to figure out what exactly the immigration judge meant. And all of us here have debates about whether or not this is an adverse credibility finding or not. He has mentioned implausibilities and inconsistencies, but I think the government goes too far to characterize this as an incredibility finding. In fact, in their own briefs, they've never made that claim that there was, in fact, an explicit adverse credibility finding. This is the first time we're hearing that. Regarding the election card, again, I want to express that he needs to be afforded an opportunity to respond to any issues regarding credibility, and Menimbo tells us that. And there, again, on the birth date, this was not ever brought up, and he was never given an opportunity to explain. And, again, this is a minor inconsistency that would not go to the heart of his claim. In this regard, Menimbo and Aguilera-Cota tell us that credibility determination must be the beginning of the inquiry and that we must start with that before we delve into the reasonings offered by the immigration judge. Thank you, counsel. The case just argued will be submitted for decision, and we will now hear argument in Goodluck v. Levitt.
judges: Goodwin, O'scannlain, Kleinfeld